UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LEE RICHARDSON**                                                                                     **PLAINTIFF**

**VS.**                                                            **CIVIL ACTION NO.: 3:11cv231-CWR-FKB**

**DONALD RHODES AND RONALD RHODES,**
**Individually**                                                                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are separate motions for attorneys' fees filed by Defendants Donald and Ronald Rhodes, Docket Nos. 84 and 86.  Defendant Donald Rhodes supports his motion with a memorandum of authorities and reply brief, *see*, Docket Nos. 85 and 90, while Ronald Rhodes relies exclusively upon his motion and supporting affidavits. Docket No. 86.  Plaintiff Lee Richardson opposes the motions with his responses, Docket Nos. 87 and 88.  For the reasons stated below, the Court finds that the motions must be DENIED.

### I. FACTUAL AND PROCEDURAL HISTORY

Lee Richardson filed suit in Hinds County Circuit Court on September 19, 2010, against twin brothers, Donald Rhodes, a sergeant with Hinds County Sheriff's Department, and Ronald Rhodes, an agent with the Mississippi Bureau of Narcotics, along with John Doe members of the Hinds County Sherriff's Department, individually and in their official capacities, seeking damages under state law and under 42 U.S.C. §§ 1981 and 1983 for violations of his Fourth and Fourteenth Amendment rights.[1] Docket No. 1-1, at 35.

---

[1] Hinds County, Mississippi was originally named a defendant in this action, but the Court granted its motion for summary judgment. Docket No. 65.  Plaintiff later conceded his state law claims and his Section 1981 claim. [Text Only Order of April 23, 2012].

1

During the course of discovery, Richardson received an incident report prepared by Sergeant Christopher Moses of the Hinds County Sheriff's Department purportedly informing him of the identities of the only officers who were present at the traffic stop. Docket No. 10-1(Incident Report), at 1, ¶ 1.  Although not identified in the incident report, Richardson always claimed that Donald and Ronald Rhodes were present and that they violated his constitutional rights.  On the other hand, throughout the litigation and trial, Defendants maintained that they were not present at the alleged incident.  In fact, they claimed further that they met Richardson for the first time at the pretrial conference held on June 14, 2013; therefore, it was not possible for them to have committed these acts.  Following a four-day trial, the jury returned a verdict for Defendants.

The Defendants now bring these motions seeking attorneys' fees pursuant to 42 U.S.C. § 1988[2] in the amount of $55,550.99.[3]

## II. LEGAL STANDARD

For the district court to properly award a defendant attorneys' fees in a § 1983 action, the court must find that (1) the defendant is a prevailing party, and (2) that the plaintiff's claims are frivolous, unreasonable, or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

## III. DISCUSSION

Having obtained a verdict in their favor, Defendants are prevailing parties.  The question left for this Court to determine is whether Richardson's claims were frivolous, unreasonable, or

---

[2] This statute provides, in part, that "in any action or proceeding to enforce a provision of sections… 1983… the court, in its discretion, may allow the prevailing party… a reasonable attorney's fee as part of the costs…"

[3] Counsel for Donald Rhodes has presented evidence of their attorney's fees, through an itemization and supporting affidavits, in the amount of $41,819.74. Docket No. 84-3.  Ronald Rhodes has also properly supported his motion and avers that his attorney's fee totaled $12,731.25. Docket No. 86-1.

without foundation.  In *Christainsburg Garment Co.*, the Supreme Court held that a "district court *may in its discretion* award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation even though not brought in subjective bad faith." 434 U.S. at 421 (emphasis added).  Moreover, a plaintiff can be assessed his opponent's attorney fees if the court finds that the plaintiff "continued to litigate after it clearly became so," when the frivolous nature of a suit is not apparent from the outset. *Id*. at 422.  This same standard applies in cases brought pursuant to 42 U.S.C. §1983. *See Hughes*, 449 U.S. at 14.  "The plaintiff's action, must be meritless in the sense that it is groundless or without foundation." *Id*.  The Fifth Circuit has explained that the reasonableness of a plaintiff's claims must be assessed as of the time of the filed suit. *See Holloway v. Walker*, 784 F.2d 1294, 1296 (5th Cir. 1986).

      District courts are discouraged from engaging in post hoc reasoning -- that is, since a plaintiff ultimately does not prevail, his case must have been meritless.  "This kind of hindsight logic," the Supreme Court has warned, "could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Christiansburg Garment Co.*, 434 U.S. at 421. *See also*, *Hughes*, 449 U.S. at 14 ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.").  Instead, when determining if a suit is frivolous, this Court is guided by factors such as "whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the court held a full trial." *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000).  The high standard applied to defendants under Section 1988 is designed to "ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by

the threat of incurring onerous legal fees should their claims fail." *Id*., (quoting *Aller v. N.Y. Bd. of Elections*, 586 F.Supp. 603, 605 (S.D.N.Y.1984)).

      A.      Plaintiff's Prima Facie Case

Defendants argue that Richardson failed to establish a *prima facie* case, basing this contention on the fact that the jury, tasked with the responsibility of evaluating the evidence concerning the alleged constitutional violations asserted by the Plaintiff, deliberated and returned a verdict in favor of Defendants. Defendants bolster this argument by asserting that Richardson's claims lacked any evidentiary support and Richardson should be held accountable now for not explaining why he chose to pursue his claim against Defendants when they were not among the officers disclosed in the incident report.

This reasoning is misguided, and it belies the very principle undergirding plaintiff's obligation to present a *prima facie* case. A prima facie case is defined as "[a] party's production of *enough evidence to allow* the fact-trier to infer the fact at issue and rule in the party's favor." Black's Law Dictionary 1382 (10th ed. 2014) (emphasis added). The important question is not whether Plaintiff presented enough evidence during trial to effectively prove his case, but whether the record contains sufficient evidence to permit the jury as fact-triers to determine the issues at hand.

Prior to trial, Richardson supported his allegations with sworn affidavits proclaiming that Defendants were the officers who accosted him on June 19, 2009 and, at trial, his testimony was substantially the same. Richardson's declarations alone, which derived from his own personal knowledge and involvement in the alleged incidents, were sufficient to provide jurors with information to infer whether there were actual violations of his constitutional rights and if these defendants committed those acts. One thing for sure, Richardson survived various motions for

summary judgment and motions for directed verdict, which left the jury to decide whether he was the subject of a stop and a search that exceeded the limits defined by the Constitution. What was less clear is who actually committed those infractions.[4] At best, Richardson's apparent mistaken identification of these defendants does not rise to the level of bad faith or vexatious conduct. On this record, this Court refuses to find that Richardson's lawsuit at the time that it was filed lacked all reasonableness.

      B.      Settlement Value

On January 15, 2013, a settlement conference was held wherein the previously named Defendant Hinds County and Defendant Donald Rhodes offered to settle this matter for what they characterize as a "nuisance value." Docket No. 85, at 9. The parties could not reach an agreement at that time and no further settlement negotiations ensued. Defendants now contend they never seriously entertained a settlement, rationalizing the offering of a nuisance value settlement as an indication of the lawsuit's frivolity. Regardless of how seemingly paltry the sum of a nuisance value settlement offer may be, the fact remains that it is a monetary proposal that was made to Richardson. Valuation of the offer is a subjective analysis, and Defendants' assessment of the offer's worth cannot dictate to this Court whether a case possessed any true settlement value. As the Fifth Circuit noted in *Myers*, "whether a defendant offers to settle a case is of questionable value in determining whether the plaintiff's claims are frivolous," as there are a host of reasons parties may choose to settle a case. 211 F.3d at 292.

---

[4] Donald Rhodes argues that Richardson certainly should have known that he was not the proper person to sue because he was not identified in the police incident report which was provided to Plaintiff's counsel. Docket Nos. 84 and 84-1. But those pre-discovery disclosures were not produced to Plaintiff until June 26, 2012, more than a year after the defendants removed this case from the Hinds County Circuit Court. At the time he filed the lawsuit, Richardson based his allegations on the information at hand. Furthermore, just because the incident report did not include the names of the defendants does not necessarily lead to the irrefutable conclusion that the defendants were not present. This Court is not prepared to declare that such reports are infallible.

C.     Trial

The Court held a full, four-day trial on the disputed issues.  Defendants contend that Richardson did not prevail on any claims or issues at trial, and that this matter proceeded past summary judgment solely because of the declarations made in his affidavit where he stated "[t]here was no doubt in his mind" that the Defendants assaulted him. Docket No. 70 at 2; Docket No. 55-2.  Despite Defendants' assertions that there was insufficient evidentiary support for Plaintiff's case-in-chief, the fact remains that the Court ruled that there were adequate questions of fact to merit a full jury trial.  As noted above, the Court denied the Defendants' motions for summary judgment before the trial and denied their motions for directed verdict during the course of the trial.  Even if the Court had dismissed the claims prior to submission to the jury, that fact alone would not support a finding of frivolity. *See Gil Ramirez Group, LLC. v. Houston Ind. School Dist.*, No. 4:10cv4872, 2014 WL 4185742, at *2 (S.D. Tex. Aug. 15, 2014) ("When a plaintiff presents some credible evidence to prove his claim, he has shown that his case has colorable merit; consequently, the prevailing defendant is not entitled to attorney's fees.") (quotations and citations omitted).  A full-blown trial was held and this fact alone countenances against a finding that Richardson's suit so lacked in merit that it was groundless or frivolous. *Myers*, 211 F.3d at 292.

D.     Continued Litigation

Defendants argue that an award of attorney fees is warranted under the guideposts of *Christiansburg Garment Co.* because Richardson continued to litigate after it became clear that his claims lacked merit. 434 U.S. at 422.  The argument is premised on the discrepancy in Richardson's description of the Defendants' heights of "at least six feet tall" given in his deposition and the Defendants' actual heights of 5'6".  The defendants sought to impeach

Richardson's description through a demonstration before the jury by having Moses, Richardson, and the defendants stand next to each other.[5] Defendants argue that this demonstration along with the defendants' testimony that they met Richardson for the first time at the pretrial conference clearly illustrated that Richardson never met Donald or Ronald Rhodes. Richardson knew he had named the improper Defendants yet continued to litigate anyway, Defendants contend.

Though this selected evidence in the midst of the trial may seem compelling to Defendants, it does not prove that Richardson's suit was groundless. Absent from Defendants' characterization of the evidence is that Richardson testified that he obtained the names of the defendants from a local law enforcement official and that his description of these Defendants was based, in part, upon his observations while he was being attacked, and placed under arrest (for no apparent reason), forced to lie on the ground and generally under duress. The jury obviously had the opportunity to weigh all of the evidence. Just because Richardson testified that the Rhodes brothers appeared to be over six feet tall when they may only be 5'6, does not relegate his descriptions and assertions to the land of vexatious and meritless claims.

Defendants are prevailing parties, but they have not convinced this Court that it should exercise its discretion and assess their attorneys' fees against this plaintiff.

---

[5] At trial, Moses testified that at 6'2" he was the shortest officer in the car. Richardson testified that his height is 5'9". The defendants maintained that they stand at only 5'6" tall.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motions for attorneys' fees should be DENIED.

>/s Carlton W. Reeves_____
>UNITED STATES DISTRICT JUDGE